In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1856

ELIZABETH SCHULTE,

*Plaintiff-Appellee,*

*v.*

KENNETH J. LENERS and TOWN OF CEDAR LAKE, WISCONSIN,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 23-cv-322-wmc — **William M. Conley**, *Judge.*

ARGUED FEBRUARY 19, 2026 — DECIDED AUGUST 5, 2026

Before EASTERBROOK, PRYOR, and KOLAR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Elizabeth Schulte co-owns real property in Cedar Lake. The Town is governed by a three-member Board of Supervisors, of which Kenneth Leners served as chairman in September 2022. The Town maintains a website (townofcedarlake.org), which it uses to post things such as agendas, officials' contact information, and updates on pending business. According to Schulte's complaint, which we take as true at this stage, until September 2022 the website allowed members of the public to comment on the

Town's posts. Members of the public often expressed their thoughts and opinions on the original post and discussed other issues. The Town did not limit who could comment or what they could say.

On September 13, 2022, Chairman Leners, who possessed editorial control of the website, posted a notice titled "Update on Recreational Residential Dwellings". The notice criticized the use of recreational vehicles in Cedar Lake and advocated greater regulation of RVs. Schulte—who owns an RV—disagreed and said so in the comment section. Others joined. Fifteen public comments addressed the substance of Leners's post; thirteen took issue with it.

A week later Leners posted a reply to Schulte, calling her message "disrespectful" and announcing that he'd "no longer allow [her] to comment on this site." Schulte answered in kind, disputing both Leners's views about RVs and his characterization of her posts. Leners promptly deleted her reply. He did the same to at least two other critics in the comment thread: label their comment disrespectful, announce a ban, and delete their posts.

On September 22, after threats of legal action, Leners removed all remaining comments from his post, again citing "disrespect[]". At an October 17 town meeting, Leners sought to justify his actions as a "judgment call" based on what he viewed as "derogatory comment[s]". The Board eventually voted to end comment sections altogether. The deleted comments from Leners's post were later restored to the site, but in a standalone thread unconnected to the original post. As of the date of Schulte's amended complaint, Leners's post of September 13 remained on the website without comments.

Schulte invoked 42 U.S.C. §1983 and sued Leners and the Town for violating her right to free speech under the First and

Fourteenth Amendments. Her claim involved two rounds of selective deletion by Leners: first, deleting individual comments; second, deleting all comments under his post, most of which were critical of him. She asserts that Leners violated the Constitution because he engaged in impermissible viewpoint discrimination, and his criteria for regulating the comment section had been vague. Additionally, she maintains that Leners and the Town unlawfully retaliated against her by shutting down comment sections on the Town website altogether.

Leners moved to dismiss Schulte's complaint and asserted qualified immunity. The district court denied his motion to dismiss the counts related to his deletion of comments, rejecting his qualified-immunity defense in the process (the district court dismissed other counts related to the Town's policies at in-person meetings that are not relevant here). 783 F. Supp. 3d 1131 (W.D. Wis. 2025). Leners and the Town immediately appealed.

We first address appellate jurisdiction. We have jurisdiction to review orders denying qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). Our role is limited, however, to deciding the scope of clearly established law. Factual disputes are for the district court. Here, the district court denied qualified immunity to Leners for his "so-called 'moderation activity' on the September post", which referred to Leners's selective deletion of comments underneath his September 13 notice. 783 F. Supp. 3d at 1140. The court refrained from determining whether Leners was entitled to qualified immunity on Schulte's retaliation and vagueness theories.

Leners's brief suggests that he is entitled to qualified immunity for more than just his deletion of comments. He argues that he could not have known that it was unlawful to "shut down the comment section of a town's website." But the

district court's qualified-immunity analysis did not address this issue; it addressed only qualified immunity for Leners's selective deletion. Indeed, the Town's ultimate removal of the comment sections seems relevant only to Schulte's retaliation theory. Elsewhere in his brief, though, Leners focuses his argument on his selective deletion of comments. At oral argument he told us that any reference to shutting down the forum was a mistake. We are thus satisfied that we have appellate jurisdiction to review whether he is entitled to qualified immunity on the selective-deletion topic.

A final note on jurisdiction. Qualified immunity covers public officials, not municipalities. *Owen v. Independence*, 445 U.S. 622 (1980). We therefore lack a basis to entertain an interlocutory appeal by the Town and dismiss it from this appeal.

When a public official invokes qualified immunity, the plaintiff has the burden of showing that the official's conduct violated a federal right that was clearly established at the time of the alleged violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Leners concedes for purposes of this appeal that his conduct violated a federal right but argues that he is entitled to qualified immunity because the unlawfulness of his conduct was not "clearly established" in 2022.

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zorn v. Linton*, 607 U.S. 568, 572 (2026). Precedent must be specific enough that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Ibid*.

Few principles in constitutional law are more clearly established than the rule that, when the government hosts speech in a public forum, the First Amendment forbids it from excluding selected speech based on the speaker's viewpoint.

See, e.g., *Shurtleff v. Boston*, 596 U.S. 243, 258 (2022); *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11–12 (2018); *Christian Legal Society v. Martinez*, 561 U.S. 661, 679 (2010); *Good News Club v. Milford Central School*, 533 U.S. 98, 106 (2001); *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 394 (1993); *Rosenberger v. University of Virginia*, 515 U.S. 819, 828–30 (1995); see also *Chiles v. Salazar*, 146 S. Ct. 1010 (2026). This holds true even if the speech is offensive. See *Matal v. Tam*, 582 U.S. 218 (2017); *Iancu v. Brunetti*, 588 U.S. 388 (2019); *Snyder v. Phelps*, 562 U.S. 443 (2011); *Papish v. University of Missouri*, 410 U.S. 667 (1973); *Cohen v. California*, 403 U.S. 15 (1971).

The comment section of the Town's website was a public forum, at least while it was open to all posters. The district court found, and we agree, that Schulte pleaded a claim that Leners discriminated against her and other commenters based on their viewpoint: he threatened to ban at least three commenters who took positions at odds with his views on camper regulations; he then deleted only their comments; and he eventually deleted all comments under his post. What's more, Leners contemporaneously justified his actions by calling the speech offensive and derogatory, an excuse the Supreme Court has foreclosed, and one that itself suggests viewpoint discrimination. See *Iancu*, 588 U.S. at 394 (holding that the "immoral or scandalous" criterion of the Lanham Act is viewpoint-based). Schulte says that this is all we need to reject Leners's qualified-immunity defense. Indeed, we have previously denied qualified immunity where it was apparent that an official discriminated against a speaker based on the content of his speech—*Surita v. Hyde*, 665 F.3d 860, 869–74 (7th Cir. 2011)—and viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829.

Leners does not deny that he discriminated based on viewpoint. He argues instead that he is entitled to qualified

immunity because the regulation of comment sections on a municipality's website presented a novel legal issue. He does not provide us with a legal theory, however, for why a reasonable official in his shoes would believe that this kind of forum lies outside the ban on viewpoint discrimination.

One possibility is that a reasonable official could have deemed the public forum closed at the time Leners deleted Schulte's posts, so that members of the public were not entitled to post comments in the first place. Just as the government can designate a forum on its previously nonpublic property, it reserves the right to close the forum at any time. See *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985). But this is of no help to Leners. Though the Town did eventually close the forum in October 2022 when it removed all comment sections from the website (which it had every right to do), the forum remained open when Schulte commented on Leners's notice in September. This is underscored by the fact that Leners seemingly invited comments to his notice by asking rhetorical questions such as, "when is enough, enough?"

A second possibility is that in 2022 a reasonable official could have perceived websites to be unique forums, so the Supreme Court's traditional forum analysis doesn't apply to private speech on them. This theory is a nonstarter too. The Supreme Court has been clear that speech on websites shares the protection of speech in other mediums, calling cyberspace, in 2017, the "most important place[] (in a spatial sense) for the exchange of views." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (holding that a state law effectively banning sex offenders from social media violated the First Amendment).

What's more, every other circuit analyzes speech in online comment sections the same as other modes of speech. For the

sake of this appeal, we assume that out-of-circuit cases are relevant to qualified immunity, as we have sometimes done in the past. See, e.g., *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016). While we recognize that the Supreme Court has assumed without deciding that "controlling Circuit precedent" can create clearly established law for qualified-immunity purposes—*Zorn*, 607 U.S. at 572 n.3; *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021); *Wesby*, 583 U.S. at 66 n.8; *Reichle v. Howards*, 566 U.S. 658, 665–66 (2012)—Leners never doubted the relevance of out-of-circuit case law to the qualified-immunity analysis. The principle of party presentation requires that we accept his implied concession. See *Clark v. Sweeney*, 607 U.S. 7 (2025); *United States v. Sineneng-Smith*, 590 U.S. 371 (2020). We thus leave this question—whether out-of-circuit case law can show clearly established law—to be answered in a future case in which it has been the subject of adversarial briefing.

Predictably, given *Packingham*, every circuit that analyzed speech in online comment sections before September 2022 applied the Supreme Court's standard forum analysis, which prohibits viewpoint discrimination. See *Davison v. Randall*, 912 F.3d 666, 681–88 (4th Cir. 2019); *Robinson v. Hunt County*, 921 F.3d 440, 447–49 (5th Cir. 2019); *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1177–80 (9th Cir. 2022), vacated and remanded on other grounds, 601 U.S. 205 (2024). (Schulte also cites *Knight First Amendment Institute v. Trump*, 928 F.3d 226 (2d Cir. 2019), rehearing en banc denied, 953 F.3d 216 (2020), vacated as moot under the name *Biden v. Knight First Amendment Institute*, 141 S. Ct. 1220 (2021), but that case lacks precedential force because of the vacatur, so we don't consider it.) We later did the same in *Krasno v. Mnookin*, 148 F.4th 465 (7th Cir. 2025), where we determined that the comment sections on the University of Wisconsin's Instagram and Facebook pages were public forums.

Leners insists that these cases are inapposite because they concerned comment sections on social media sites, and social media serves a purpose different from a government website. But we don't see any material differences. In fact, at a meeting of the Board, Leners himself represented that the comment sections on the Town's website functioned similarly to responsive comments on a Facebook post. The social media cases concerning comment sections are about as pertinent as you can get. It was clearly established in 2022 that speech on websites is protected and analyzed like speech in other public forums.

A final more plausible theory, and the one that seems to underlie Leners's argument, is that a reasonable official could have deemed the comment section the *Town's* speech—not private speech. If so, Leners could have discriminated how he pleased in his capacity as Chairman.

When the government speaks for itself, "it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). The government is "entitled to promote a program, to espouse a policy, or to take a position" when speaking on its own behalf. *Id.* at 208. And, like a private speaker, the government "engages in speech activity" when it "exercises editorial discretion in the selection and presentation of" content. *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666, 674 (1998). "[E]xpressive activity includes presenting a curated compilation of speech originally created by others." *Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024). A public broadcaster, therefore, can select which speakers and stories to present without violating the rule against viewpoint discrimination. *Arkansas Educational*, 523 U.S. at 673–74. Similarly, a town has latitude to choose which monuments to display on public property even when the monuments are

designed and submitted by private parties. *Pleasant Grove v. Summum*, 555 U.S. 460 (2009). Likewise, a town could solicit letters to the editor (or, say, "Letters to the Chairman") for display on its official website and publish only the ones it deems worthy, just as a newspaper could. Cf. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974). The operative question for this case, then, is whether a reasonable officer could have understood the Town to be presenting its own message when it hosted the comment sections.

*Shurtleff* held that the City of Boston illegally discriminated against a group that wanted to fly a "Christian Flag" as a part of the City's longstanding program allowing private groups to fly their chosen flags over the plaza of City Hall. Even though the Court observed that flags historically represent government views, and the public often attributes a flag's message to the city, the Court found it "most salient" that Boston did not "actively control[] [the] flag raisings and shape the messages the flags sent." 596 U.S. at 253–56. The City had "no written policies or clear internal guidance" on what flags could be displayed. *Id.* at 257. The Court thus concluded that the flags were private speech because of "the city's lack of meaningful involvement in the selection of flags or the crafting of their messages". *Id.* at 258.

Given *Shurtleff* (decided in May 2022), it was clear in September 2022 that when private parties communicate through a public forum, the communication is private speech when the government lacks *any* policy concerning the content of that speech. Recall that the speech at issue here is not the content on the Town's website writ large but the comments beneath a post. As stated in the complaint (and conceded by Leners at oral argument), the Town did not have a policy concerning who could comment or what they could say. Commenters often used the comment sections to discuss

municipal affairs amongst themselves. Put differently, the comment sections were a far cry from a letters-to-the-editor section over which a publisher exercises editorial authority. The lack of any official policy or hint of governmental control is dispositive, and no reasonable official in Leners's shoes could have concluded that the comment sections were government speech. It follows, then, that no reasonable official could have concluded that it was legal to cull speech selectively from those comment sections based on viewpoint.

We thus conclude that Leners is not entitled to qualified immunity. It was clearly established in September 2022 that a local government violates the First Amendment when it hosts private speech on its official website, lacks any policy or history of regulating that speech, and regulates based on its viewpoint.

The Town's appeal is dismissed. The district court's decision that Leners is not entitled to qualified immunity is

                                                    AFFIRMED.